# EXHIBIT B



COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

Superior Court Department
Civil Action No. SUCV2013-_____

13-1828

|  |  |
|---|---|
| TOWN OF LEXINGTON, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| FERRARA FIRE APPARATUS, INC., | ) |
| Defendant | ) |

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

NOV 05 2013

CLERK

## COMPLAINT AND JURY DEMAND

### Introduction

This is an action by the Town of Lexington (the "Town") to recover damages, attorneys'

fees and costs it incurred due to its purchase of a defective fire truck, known as Engine 2, from

Ferrara Fire Apparatus, Inc. ("Ferrara"), and Ferrara's refusal to remedy appropriately those

defects.  Ferrara's delivery of the defective Engine 2, its false promises of Engine 2's reliability,

and its refusal to remedy the problems in a way that fully compensates the Town constitute

breaches of contract and warranties (both express and implied) and unfair or deceptive acts or

practices in violation of M.G.L. c. 93A.

### Parties

1.     The Town of Lexington is a body politic and a political subdivision of the

Commonwealth, duly incorporated under the laws of Massachusetts with its primary address at

Lexington Town Hall, 1625 Massachusetts Avenue, Lexington, Massachusetts 02420.

2.     Ferrara Fire Apparatus Inc. is a business corporation in the business of

manufacturing and selling emergency response vehicles, including fire engines, with its principal

place of business at 27855 James Chapel Road, Holden, Louisiana 70744.

{A0200138.3 }

**Facts**

*Procurement and Contracting for Engine 2*

3.     In October 2009, the Town issued an invitation to bid, described as #10-14 Custom Fire Department Pumper, dated October 29, 2009, under G.L. c. 30B, seeking "qualified contractors for the manufacture and delivery of one (1) Custom Fire Department Pumper according to the specifications" included with the invitation to bid.

4.     The Town's invitation to bid contained a number of sections, including sections entitled Bid Offer, Requirements, Terms & Conditions, Specifications and Contract (collectively, the "Bid Documents").

5.     On October 29, 2009, Ferrara signed and submitted a bid in response to the Town's invitation to bid (the "Bid Offer").

6.     The Town selected Ferrara as the lowest responsive and responsible bidder to manufacture and deliver a new fire truck for the Town at the price of $498,542 (including credit to the Town for a trade-in vehicle).

7.     By submitting a signed bid and by reason of its acceptance by the Town as the successful bidder, Ferrara was obligated to supply the specified fire truck and deliver it to the Town's Fire Department at 45 Bedford Street in Lexington, Massachusetts, in compliance with the Bid Documents.

8.     In doing so, Ferrara transacted business in Massachusetts and is subject to the jurisdiction of this Court pursuant to M.G.L. c. 223A.

9.     In the Bid Offer, Ferrara specifically agreed to furnish the Town with a Custom Fire Department Pumper under the Terms and Conditions of the Bid Documents and in compliance with the Specifications.

10.     The Terms & Conditions of the Bid Documents specifically provide that:

The successful bidder shall repair, replace, or make good without cost and limitation to the Town, any defects or faults as per the warranty specifications...after the date of acceptance of articles furnished hereunder resulting from imperfect or defective work done or equipment furnished by the Seller. (Terms & Conditions Number 6)

11.     The Contract (attached to the Invitation to Bid and accepted by Ferrara) provides that:

The Vendor will perform all work, provide all services and labor, materials, transportation, supplies, supervision, organization and other items of work and cost necessary for the manufacture, delivery, warranty of those items listed in #10-14, Custom Fire Department Pumper, dated October 29, 2009, according to this agreement. (Contract, p. 1).

12.     The Contract further provides that:

In addition to any implied warranties, the Vendor hereby warrants that the Products shall be fit for intended use and shall be free from defects in and malfunctions arising from workmanship, material and design and shall conform to the requirements of this contract. Inspection, test, acceptance or use of the goods furnished hereunder shall not affect the Vendor's obligation under this warranty, and such warranties shall survive inspection, test, acceptance and use. (Contract, Section 23, Warranty)

13.     In addition to the express warranties that Engine 2 would be free from defects, Ferrara also provided the following specific warranties set forth in the Specifications section of the Bid Documents (p. 14):

    A.    Chassis – Five (5) Years
    B.    Chassis Frame Rails – Lifetime
    C.    Engine – Five (5) Years
    D.    Transmission – Five (5) Years
    E.    Fire Pump – Five (5) Years Parts, Two (2) Years Labor
    F.    Water Tank – Lifetime
    G.    Apparatus Body – Ten (10) Years
    H.    Rust – Two (2) Years
    I.    Paint – Five (5) Years Non Pro-rated  ()

*Delivery and Defective Performance of Engine 2*

14.     On March 16, 2010, Ferrara invoiced the Town $499,034 for a fire truck described as a Multi-Vocational Pumper, a custom pumper with an igniter chassis (Engine 2).

15.     On June 25, 2010, the Town approved payment for Engine 2 and subsequently paid Ferrara's invoice in full.

16.     On July 23, 2010, Ferrara delivered Engine 2 to the Town.

17.     On or about July 30, 2010, the Town put Engine 2 into service.

18.     Since receipt of Engine 2, beginning only one day after putting it into service, the Town has experienced persistent and chronic problems with Engine 2, necessitating the Town to repeatedly take Engine 2 out of service for repairs.

19.     These mechanical and service issues range from minor repairs to significant problems that render Engine 2 inoperable.  So far, Engine 2's issues include but are not limited to:

- Engine bucking;
- Steering failures and issues;
- Suspension problems;
- Braking system issues;
- Transmission problems (engine warning light activation);
- Electrical issues with emergency lights, among other components;
- Inoperable removable winch due to sizing issues;
- Uninitiated deployment of deck spray gun;
- Unusual tire wear requiring premature replacement;
- Problems with the seat belts functionality;
- Repeated leaking of anti-freeze and coolant systems;
- Failure of the air conditioner;
- Wire corrosion; and
- Leaking and other problems with the pump manifold.

20.     Notwithstanding repairs to Engine 2 while out of service for prolonged periods of time, the persistent and chronic issues have not been resolved by Ferrara's warranty service

providers, first, Northeast Emergency Apparatus in Auburn, Maine and then later at Specialty Vehicles in Attleboro, Massachusetts.

21.     The Town has had to take Engine 2 out of service for repairs at least 24 times since delivery in 2012, resulting in no less than 274 days out of service, or nearly one-third of the time of the Town's ownership.

22.     The scope and number of repairs required to keep Engine 2 minimally operational are not diminishing.  So far in 2013, Engine 2 has been out of service eight (8) separate times, more than any previous year.

23.     Given this history of extensive repairs and unresolved mechanical issues, there is no reason to believe that Engine 2 will ever be a reliable piece of emergency fire equipment.

*The Town's Attempts to Negotiate a Remedy for Engine 2's Defects with Ferrara*

24.     Beginning about two years ago, the Town brought its concerns with Engine 2's ongoing mechanical and other defects to Ferrara.  The Town has raised the issue with Ferrara on numerous occasions since that time, both in person with its representatives and in writing.

25.     In each instance, Ferrara continually assured the Town that Engine 2 was not fundamentally defective and could be repaired.

26.     Relying on Ferrara's assurances and representations, the Town gave Ferrara ample opportunity to cure Engine 2's defects and provide the Town with an appropriate remedy for the damages it has incurred.

27.     Ferrara has failed to satisfy its assurances to the Town that Engine 2 would be repaired so as to cure Engine 2's defects.  Indeed, Engine 2 has continued to date to suffer mechanical issues and break downs.

28.     In a letter dated October 2, 2012, the Town notified Ferrara that Engine 2's defects were impeding the Town's ability to respond to emergencies and demanded that Ferrara take back Engine 2 and refund the Town its purchase price minus the pro rata portion of the price to reflect the time in use for the Town.

29.     A true and accurate copy of the Town's letter to Ferrara dated October 2, 2012 is attached as Exhibit A.

30.     In its response on October 3, 2012, Ferrara stated only that it would "compile their documentation so that everyone is fully aware of the issues with this truck," in effect refusing to take back Engine 2.

31.     A true and accurate copy of Ferrara's response dated October 3, 2012 is attached as Exhibit B.

32.     Despite numerous requests by the Town and promises by Ferrara to provide the service "documentation" for Engine 2, Ferrara never provided the Town with this information.

33.     In addition, to date, the Town has been unable to obtain all of the service records from Ferrara's warranty service providers.  Upon information and belief, the warranty service providers' refusal to provide the service records for Engine 2 was at Ferrara's direction.

34.     On September 16, 2013, the Town sent Ferrara a demand pursuant to M.G.L. c. 93A, § 9, asserting that Ferrara's delivery of a defective emergency response vehicle and then its failure to provide an appropriate remedy for those defects constitute unfair and deceptive acts or practices in Massachusetts ("Chapter 93A Letter").

35.     In its Chapter 93A Letter, the Town demanded that Ferrara (a) accept immediate return of Engine 2; (b) refund the Town the purchase price for Engine 2, discounted for a pro rata

value for the days in use by the Town (based on expected life of the vehicle); and (c) reimburse the Town for its attorneys' fees incurred in pursuing the legal action.

36.     A true and accurate copy of the Town's Chapter 93A Letter is attached to this Complaint as <u>Exhibit C</u>.

37.     Ferrara did not make a reasonable settlement offer in response to the Town's Chapter 93A Letter.

*Current Status of Engine 2 and Damage to the Town*

38.     Pursuant to the Bid Documents, including the Contract between Ferrara and the Town, Ferrara warranted that Engine 2 would be fit for the purpose of serving as an emergency fire apparatus. This means that it must be reliable and immediately available for use 24 hours a day, 7 days a week, 365 day a year. Because of the defects and service downtime, however, Engine 2 has not been fit for that intended purpose.

39.     To date, Engine 2 continues to malfunction. In fact, the reliability issues with Engine 2 have impaired the Town's ability to respond to emergencies.

40.     The inability to use Engine 2 as a reliable piece of emergency response equipment has significantly affected the Town. Engine 2 serves as the primary piece of emergency equipment assigned to the East Lexington Station. While Engine 2 is out of service, the Town has been forced to place an older fire engine into the front line of emergency response. This, in turn, requires the Town to service the older back-up engine and to incur the expense for such service which would not otherwise be incurred but for the failure of Engine 2.

41.     In addition, the Town has received complaints from the union representing its firefighters that the firefighters do not have faith in the operation of Engine 2 due to its service history and that they find it to be unreliable and, therefore, unsafe.

42.     The Town does not believe that Engine 2 will meet even a quarter of its expected fifteen-year life expectancy.

43.     As a result and because of Ferrara's intransigence in responding to the Town's demands that it lives up to its legal obligations, the Town appropriated funds for the purchase of a new fire engine to replace Engine 2 at the 2013 Annual Town Meeting.  This out-of-cycle purchase, approximately 12 years before Engine 2 would have been replaced if not defective, has cost the Town at least $465,000.

44.     As soon as that replacement fire engine is placed in service, the Town plans to retire Engine 2 for use only as a back-up vehicle (if at all), after only three years of partial use.

45.     As a result of Engine 2's defects, the Town has incurred the following damages:

   a.  Costs of Engine 2 ($499,034.00);
   b.  Servicing of Engine 2 not covered by warranty (estimated at $ 35,000 to date);
   c.  Servicing of back-up vehicle;
   d.  Cost of replacement fire engine (estimated at $465,000); and
   e.  Attorney's fees.

## COUNT I: BREACH OF CONTRACT

46.     The Town restates the allegations set forth in Paragraphs 1-45, above.

47.     Ferrara has breached its Contract with the Town by failing to provide a fire truck in conformity with the terms of the Contract and without defect, and by failing to replace Engine 2 when requested by the Town and in the face of its problematic service history.

48.     As a result, the Town has suffered significant monetary damages, including the costs of the repairs, the loss of use of Engine 2 when it was out of service, and costs of maintaining back-up vehicles to replace Engine 2 on a regular basis.

49.     Ferrara is liable for these costs as they are a foreseeable result of its breach.

## COUNT II: BREACH OF EXPRESS WARRANTY

50.    The Town restates the allegations set forth in Paragraphs 1-49, above.

51.    Ferrara has breached its warranties contained in the Bid Documents, including warranting that Engine 2 would be free of defects, fit for its intended purpose as a reliable piece of emergency fire equipment, and that Ferrara would pay all costs of repair or replacement.

52.    On account of such breaches of the express warranties contained in the Bid Documents, the Town has been foreseeably injured.

## COUNT III: BREACH OF IMPLIED WARRANTIES
## (MERCHANTABILITY and FITNESS FOR A PARTICULAR PURPOSE)

53.    The Town restates the allegations set forth in Paragraphs 1-52, above.

54.    By selling Engine 2 to the Town, Ferrara warranted that Engine 2 was merchantable, meaning that it was suitable for sale, pursuant to M.G.L. c. 106, §2-314.

55.    Yet, Engine 2 has malfunctioned ever since the Town took possession in July 2010, and has proven over the years to be wholly unreliable and defective.

56.    Therefore, Ferrara has breached the implied warranty of merchantability by selling Engine 2 to the Town.

57.    By selling Engine 2 to the Town under the Terms & Conditions in the Bid Documents, which were known to Ferrara at the time of its Bid, Ferrara warranted that Engine 2 was fit for its intended purpose as an emergency vehicle available to immediately respond to fires and other emergencies, pursuant to M.G.L. c. 106, §2-315.

58.    Ferrara knew or should have known that the Town was relying on Ferrara's skill and judgment as a manufacturer of fire apparatus to furnish a reliable and defect-free vehicle to

respond to emergencies. Indeed, in Contract § 23, Ferrara warrants that Engine 2 will be "fit for the intended use".

59.     Engine 2 has malfunctioned ever since the Town took possession in July 2010 and has proven over the years to be wholly unreliable and defective as a piece of emergency fire equipment.

60.     Therefore, Ferrara has breached the implied warranty of fitness for a particular purpose by providing the defective Engine 2 to the Town.

## COUNT IV: VIOLATION OF G.L. c. 93A

61.     The Town restates the allegations set forth in Paragraphs 1-60, above.

62.     Ferrara is engaged in the conduct of trade or commerce under M.G.L. c. 93A, § 2.

63.     As the successful bidder, Ferrara was obligated to "comply with all applicable Federal, State, or Town of Lexington statutes, rules and regulations" (Terms & Conditions Number 8), including G.L. c. 93A.

64.     The Attorney General of Massachusetts has declared in regulations that it is an unfair and deceptive trade practice under G.L. c. 93A "to fail to perform or fulfill any promises or obligations arising under a warranty." 940 C.M.R. 3.08.

65.     Ferrara's conduct described herein, including (1) its delivery of the defective Engine 2; (2) its continued assurances to the Town that Engine 2 was not defective and could be repaired, despite its extraordinary service history; (3) its refusal to pay for all of the required service of Engine 2 under the warranties; and (4) its refusal to provide the Town with the service records for Engine 2 upon request, all constitute unfair or deceptive acts or practices in violation of M.G.L. c. 93A, § 9.

66.     As required under M.G.L. c. 93A, §9, the Town sent Ferrara a demand letter on September 16, 2013.

67.     Ferrara did not respond with a reasonable settlement offer within thirty (30) days.

68.     Ferrara's violations of M.G.L. c. 93A directly and foreseeably caused the Town significant damages, including loss of money.

## COUNT V: UCC REVOCATION OF ACCEPTANCE

69.     The Town restates the allegations set forth in Paragraphs 1-68, above.

70.     Due to the Town's prolonged experience with the unreliability of Engine 2 and the failure of Ferrara to make good on its assurances, the Town notified Ferrara that it revoked acceptance of Engine 2 by letter dated October 2, 2012, and demanded a refund of the cost of Engine 2, discounted to reflect the period of the Town's intermittent use.  (*See* Exhibit A).

71.     Ferrara refused to take Engine 2 back from the Town.

72.     The failure of Engine 2 and Ferrara to comply with the requirements in the Bid Documents, as described herein, have substantially impaired the value of Engine 2 to the Town.

73.     The Town's revocation was timely in light of Ferrara's repeated denials of any systemic problem with Engine 2, its repeated promises and assurances to repair the defects, and its ultimately unsuccessful attempts to make such repairs.

## COUNT VI: INDEMNIFICATION

74.     The Town restates the allegations set forth in Paragraphs 1-73, above.

75.     Terms & Conditions Number 13 contained in the Bid Documents states: "The Contractor shall agree to Indemnify, defend, and hold the Town harmless from any and all claims arising out of the performance of this contract."

76.     Furthermore, the Contract contains an Indemnification and Hold Harmless

Provision (Section 8), which states (in part):

> The Vendor agrees to indemnify, defend and hold harmless the Town and its
> agents, boards, committees and employees, except for wrongful or negligent acts
> of the Town, for any and all claims, losses, costs, expenses or damages of any
> kind resulting or arising out of the performance of this contact by the Vendor
> [Ferrara], its officers, agents or employees.

77.     Section 22 of the Contract states that "[t]he Vendor agrees that if a lawsuit is

instituted by the Town for any default on the part of the Vendor, and the Vendor is adjudged to

be in default, the Vendor shall pay to the Town all costs and expenses, expended or incurred by

the Town in connection therewith, and reasonable attorney's fees."

78.     Because this Complaint and Jury Demand states a claim against Ferrara that arises

out of Ferrara's failure to perform under the Bid Documents, Ferrara is obligated to indemnify

and hold the Town harmless.

79.     Ferrara must reimburse the Town for all costs incurred to repair Engine 2, the loss

of use of Engine 2, the costs incurred to service a back-up vehicle for Engine 2, the cost of

replacing Engine 2, the legal fees incurred in asserting these claims to date, and the legal fees and

costs that will continue to accrue during the pendency of this action in the future.

**WHEREFORE,** the Town respectfully requests that this Court:

1.     Order Ferrara to provide a full refund of the purchase price payable upon

notification by the Town to Ferrara that Engine 2 was available and ready for pick-up by Ferrara

or its designee;

2.     Award the Town its damages as a result of Ferrara's breach of warranties;

3.    Award the Town its damages as a result of Ferrara's breaches of contract, including attorneys' fees and costs as provided in the Contract;

4.    Award the Town multiple damages for Ferrara's violations of Chapters 93A, together with attorneys' fees and costs;

5.    Order Ferrara to hold the Town harmless for all costs incurred as a result of Ferrara's actions; and

6.    Grant the Town such other relief as the Court deems just and proper.

### Jury Claim

**The Town demands a trial by jury on all claims so triable.**

TOWN OF LEXINGTON
By its attorneys,

David S. Mackey (BBO# 542277)
Nina L. Pickering-Cook (BBO# 668030)
Jessica A. Wall (BBO pending)
ANDERSON & KREIGER LLP
One Canal Park, Suite 200
Cambridge, MA 02141
Tel.: (617) 621-6531
Fax: (617) 621-6631
Email: dmackey@andersonkreiger.com
        npickeringcook@andersonkreiger.com
        jwall@andersonkreiger.com

Dated: November 5, 2013

# EXHIBIT A



## *Town of Lexington*
### Fire Department

John T. Fleck                                          Tel:  (781) 862-0272
Assistant Fire Chief                                   Fax: (781) 861-2791


October 2, 2012


Ferrara Apparatus Incorporated
Charles Grimes, Service and Warranty Advisor
27855 James Chapel Road
P.O. Box 249
Holden, LA. 70744


Dear Mr. Grimes,

In June 2010, the Town of Lexington accepted delivery of a new fire engine, known as Truck 2.  Since that  date, however, this front line piece of apparatus has been out of service a majority of the time due to manufacturing and design defects.  At this point, the Town can no longer rely on Truck 2 as a piece of front line emergency equipment and seeks  to work with you to reach a fair and prompt resolution.

Although I will provide general descriptions here, the factory service company, NorthEast Apparatus, based in Auburn, Maine, can provide you with the details of the service and warranty work performed on Truck 2 over the past 28 months.  The service issues with Truck __ include a variety of problems, such as  deck gun failure, suspension problems, steering, leaking antifreeze, electrical, a/c, pump manifold problems and more.  In March 2012, the Town estimated that Truck 2 was out of service more than 135 days.  Then in April, it was again taken out of service for suspension evaluation and the replacement of . tires.  At approximately 12,000 miles the tires showed irregular wear and were replaced.  This indicated a problem with the suspension that took working with our new service and warranty company, Specialty Vehicles of Attleboro, Massachusetts and two suspension evaluations by third party vendors, to resolve with the engine only returning to service last week.

Each time this engine is out of service, the Town is forced to place our older backup engine to the front line for emergency response.  This is unacceptable.  Over the past 28 months, this practice has caused more wear and tear on our backup piece and created logistical problems with delivering, picking up and having Truck 2 towed for repairs and evaluation.

Frankly, Truck 2 has not met the expectations of the Town of Lexington for use or the warranty provisions of the purchase documents.  Based on the history of the vehicle, we do not anticipate the failure rate to improve or cost of operation to diminish over its expected useful life.  It is the opinion of the Fire Department that the engine is unreliable and our ability to respond to calls is greatly impaired by this piece of apparatus being continually out of service.  Therefore, the only reasonable conclusion is that Truck 2 is defective.

The Town of Lexington is requesting that Ferrara accept the return of Truck 2 under the existing warranty, and provide the Town with a refund of the cost of Truck 2, discounted to reflect the period of the Town's intermittent and limited use over the past 28 months.

I have been working with Ferrara Sales Representative Ed Pollard and Scott Lake from Northeast Apparatus throughout this process to develop an appropriate resolution. We have collectively discussed this situation and have agreed to share our documentation. Give the importance of this equipment in the Town's ability to respond to fire emergencies, I ask that you provide a written response to this request by **Tuesday, October 11**. Please note that if we are unable to resolve this promptly and to the Town's satisfaction, the Town intends to pursue all available legal remedies against Ferrara for its full damages as a result of the defective Truck 2.

I appreciate your consideration to this request and look forward to hearing from you soon.

Sincerely,


John T. Fleck
Assistant Fire Chief
Town of Lexington
cc:     Carl Valente, Town Manager
        John Wilson, Chief of Lexington Fire Department
        William Lahey, Town Counsel

# EXHIBIT B



FERRARA FIRE APPARATUS, INC.

October 3, 2012

John T. Fleck
Assistant Fire Chief
Town of Lexington
45 Bedford Street
Lexington, MA  02420

Dear Mr. Fleck:

I have received your letter concerning the issues and down time of Engine 2.  At this point, I would like for all parties to compile their documentation so that everyone is fully aware of the issues with this truck.

I have already spoken to Scott with Northeast Emergency and he will be sending me his documentation. I will make contact with Specialty Vehicles and I am sure that they will do the same.  If you could get your paperwork together and send it to me then I will have all the documentation to review.

Once we have all the documentation in place, we can then look at the issues and work with you on a solution that will be satisfactory to all parties.

Sincerely,

Charlie Grimes
Field Service and Warranty Advisor

CWG

# EXHIBIT C



ANDERSON & KREIGER LLP

NINA PICKERING-COOK
npickeringcook@andersonkreiger.com
T: 617-621-6536
F: 617-621-6636

September 16, 2013

**VIA EMAIL and CERTIFIED MAIL
RETURN RECEIPT REQUESTED
# 7011 0110 0001 4470 7958**

Ferrara Fire Apparatus Inc.
Chris Ferrara, CEO
27855 James Chapel Road
PO Box 249
Holden, Louisiana  70744
Email:  Chris.Ferrara@ferrarafire.com

*Re:     G.L. c. 93A Demand Letter from Town of Lexington*

Dear Mr. Ferrara:

This firm represents the Town of Lexington (the "Town"). We are sending this formal demand letter under Massachusetts General Laws Chapter 93A to you as the Chief Executive Officer of Ferrara Fire Apparatus, Inc. ("Ferrara"). As you may know, the Town sent Ferrara a similar demand letter in November 2012. Ferrara's response to that demand was completely inadequate. At this point, and without waiving or otherwise foregoing any of its claims asserted in the November 2012 demand letter, the Town hereby asserts that Ferrara is liable pursuant to G.L. c. 93A, § 9, in addition to §§ 2 and 11 (as claimed in the November 2012 demand letter), for engaging in unfair or deceptive acts or practices in Massachusetts by manufacturing and delivering a defective fire truck to the Town, and then failing to adequately remedy those defects.

As outlined in the November 2012 demand letter and repeated here, these acts have resulted in the Town's inability to use that fire truck, known as Engine 2, for frequent and substantial periods of time, have caused significant monetary losses for the Town, and have posed a risk to the Town's public safety. Engine 2 has become essentially useless to the Town. And the Town's damages stemming from Ferrara's failures have only grown since November 2012. After Ferrara failed to give a reasonable settlement offer in response to the Town's November 2012 demand letter, the Town had no choice but to expend even more public money to procure a

{A0210122.2 }

Ferrara Fire Apparatus Inc.
September 16, 2013
Page 2

new fire engine to replace Engine 2. Ferrara's violations of c. 93A and the resulting damages to the Town are described in more detail below.

Please be advised that, if Ferrara does not make a reasonable offer of settlement within thirty (30) days of your receipt of this letter as required under G.L. c. 93A, the Town intends to seek multiple damages, attorney's fees and costs, and pre- and post-judgment interest as a result of Ferrara's acts.

## I.      FACTUAL BACKGROUND AND BASIS FOR DEMAND

In July 2010, Ferrara delivered Engine 2 to the Town. Almost immediately, Engine 2 had service issues. These service issues have ranged from small repairs to significant mechanical issues rendering Engine 2 inoperable. These include, but are not limited to the following:

- Deck gun failure;
- Suspension problems;
- Unusual tire wear requiring replacement;
- Engine "bucking";
- Transmission problems (engine warning light activation);
- Inoperable receiver and winch;
- Problems with the seat belts functionality;
- Steering failures and issues;
- Repeated leaking of anti-freeze;
- Electrical issues with emergency lights, among other components;
- Failure of the air conditioner; and
- Leaking and other problems with the pump manifold.

Service records confirm that, as a result of these failures, Engine 2 has been out of service for no less than 274 days over the 37 months that the Town has owned it. In each of these instances, the Town has had to either repair the issue(s) itself or get the broken-down Engine 2 to Ferrara's service and warranty provider to repair, at Northeast Emergency Apparatus in Auburn, Maine, or more recently at Specialty Vehicles in North Attleboro, Massachusetts. While Engine 2 is out of service, an older engine must be put to use, requiring additional maintenance and service of that engine to ensure that it is ready.

On top of the financial impact of these extensive and repeated repairs and replacement measures, Ferrara's actions pose a risk to public safety. Each time this engine is out of service, the Town is forced to place an older backup engine into the front line of emergency response. In addition, given its history of break downs, when Engine 2 has been in service, the firefighters manning it have expressed a lack of confidence that it will perform as required or needed. This is unacceptable. In sum, the reliability issues with Engine 2 are impairing the Town's ability to respond to emergencies. If the Town cannot rely on Engine 2 to function when called upon, it has become essentially worthless.

{A0210122.2 }

Ferrara Fire Apparatus Inc.
September 16, 2013
Page 3

The Town has attempted to discuss these concerns with Ferrara representatives for over two years now to no avail. In August 2011, the Town met with representatives from Ferrara and Northeast Apparatus to discuss the repeated mechanical problems and defects and necessary corrective measures. There was no response from Ferrara to the issues raised in the meeting, except to point out the terms of its warranty. Over the past few months, the Town continued expressing its concerns about Engine 2 to Ferrara representatives in phone calls. In a letter dated October 2, 2012, the Town made clear to Ferrara that Engine 2's defects were impeding the Town's ability to respond to emergencies and requested that Ferrara take back Engine 2 and refund the Town its purchase price minus the pro rata portion of the price to reflect the time in use for the Town.

Ferrara has failed to address these concerns or respond to the Town's requests, including the October 2nd letter. All Ferrara has done is request additional documentation from the Town and (purportedly) Northeast Apparatus, concerning the required repairs. The Town provided those documents within days. Ferrara, however, has refused to provide the Town with a copy of the warranty and repair documents from either Northeast Apparatus or Specialty Vehicles, despite repeated requests. In addition, both Northeast Apparatus and Specialty Vehicles have similarly failed to respond to the Town's requests for those documents, presumably at Ferrara's instruction. All that the Town received from Ferrara as a response to its November 2012 demand letter was a meager $15,000 (which does not even put a dent in the Town's out of pocket expenses for Engine 2), a slightly extended warranty on Engine 2 and a wholly-inconvenient offer to ship Engine 2 to Ferrara's facility in Louisiana for an overhaul, putting it out of service for an unknown number of weeks or months. The Town has refused to accept that offer.

Instead, the Town has been forced to purchase a new fire engine to replace Engine 2 at least 15 years before the Town would anticipate making such a purchase in the normal course. That new engine was ordered in July 2013 (after the required appropriation by Town Meeting) and is expected to be delivered in March 2014. It is expected to cost the Town approximately $465,000.

## II.     MASSACHUSETTS GENERAL LAWS CHAPTER 93A VIOLATIONS

Massachusetts General Laws Chapter 93A, § 2(a) makes unlawful any "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce." Liability under G.L. c. 93A requires two elements: the conduct must be an unfair or deceptive act or practice, and the act or practice must be a foreseeable cause of injury to the plaintiff. *See Lord* v. *Commercial Union Ins. Co.*, 60 Mass. App. Ct. 309, 317 (2004); *see also Aquino* v. *Pacesetter Adjustment Co.*, 416 F.Supp.2d 181, 192 (D. Mass. 2005).

The Attorney General of Massachusetts regulations identify specific acts that fall under the definition of "unfair and deceptive acts or practices" in G.L. c. 93A. Specifically with respect to vehicles, it is an unfair or deceptive act or practice to "fail to perform or fulfill any promises or obligations arising under a warranty." 940 C.M.R. §3.08(2). The Attorney General also finds that any claims "relating to the construction, durability, reliability .... or life expectancy of [a]

Ferrara Fire Apparatus Inc.
September 16, 2013
Page 4

product" that have "the capacity or tendency or effect of deceiving buyers" is a violation of G.L. c. 93A. 940 C.M.R. §3.05. Specifically with respect to vehicles, it is a violation of G.L. c. 93A to deliver a vehicle knowing that it is defective. *Calimlim v. Foreign Car Center, Inc.*, 392 Mass. 228 (1984) (finding that the dealer knew the vehicle was defective when sold after buyer found defects only three days later).

In addition, a violation of the so-called New Car Lemon Law under G.L. c. 90, § 7N½ is a *per se* violation of G.L. c. 93A. The New Car Lemon Law provides that a manufacturer is liable under G.L. c. 93A when the manufacturer sells a new vehicle to a consumer and the vehicle malfunctions substantially impair the use or safety of the vehicle, the consumer has reported the malfunctions to the manufacturer during the warranty period, the manufacturer does not fix the vehicles as evidenced by the vehicle being out of service for a cumulative total of 15 or more days, the manufacturer has been given an additional 7 days to cure the defects and it fails to accept return of the vehicle from the consumer for a refund of the contract price, with an adjustment for use of the vehicle. *See* 52 Massachusetts Practice, Law of Chapter 93A, § 9.3.

Ferrara committed "unfair or deceptive acts or practices in the conduct of...commerce," including, but not limited to (1) inducing the Town to purchase Engine 2 based on false promises of reliability and durability; (2) providing a defective fire truck to the Town at the time of delivery (unbeknownst to the Town); (3) failing to fully perform as required by the applicable warranties; (4) failing to deal with the Town in good faith to resolve this problem; and (5) withholding and instructing others to withhold material information concerning Engine 2's defects.

As a direct result of Ferrara's unfair or deceptive actions, omissions, and misrepresentations, the Town has incurred substantial costs and damages to date and will likely continue to incur costs and damages as well as injuries for which damages are not an adequate remedy. The Town's damages specifically include, among others, the following:

- Purchase price of defective Engine 2;
- Repair costs for Engine 2 not covered by warranty;
- Logistical costs of transporting defective Engine 2 for repairs;
- Loss of use of Engine 2 for no less than 274 days;
- Additional repair and service costs for back-up fire apparatus used in place of Engine 2;
- Inability to rely on Engine 2 as reliable fire equipment;
- Out of sequence purchase of new fire engine; and
- Legal fees and costs.

By themselves, the purchase price of Engine 2 and the money expended out of pocket by the Town to fix the continuous problems with it exceed $550,000. These damages are the foreseeable result of the defects with Engine 2. Indeed, the Town specifically identified its concern about many of these items during the past two years of negotiating this issue with Ferrara.

Ferrara Fire Apparatus Inc.
September 16, 2013
Page 5

## III.   SETTLEMENT DEMAND

Engine 2 has not met the Town's reasonable expectations for its use, or complied with the warranty provisions of the purchase documents.  Based on the repeated failures of Engine 2, including many reoccurring problems, the Town does not have any faith or reasonable expectation that Engine 2 will improve its failure rate or that its costs of operation will decrease over its useful life.

In light of the foregoing, and without waiving any of its rights under statutory or common law, including its rights to recover the purchase price paid for the out-of-sequence replacement fire engine because of Engine 2's failure to perform, the Town demands that Ferrara:

1. Accept immediate return of Engine 2;
2. Refund the Town the purchase price for Engine 2, discounted for a pro rata value for the days in use by the Town (based on the expected life of the vehicle); and
3. Reimburse the Town for its attorneys' fees incurred in pursuing this legal action.

Under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement.  Please understand that if you fail to do so, the Town will take immediate legal action and, at that point, its' demand will be for treble damages and the reasonable attorney's fees incurred by the Town.

Sincerely,

Nina L. Pickering-Cook

cc:   Carl Valente, Lexington Town Manager (via email)
      William Lahey, Lexington Town Counsel (via email)
      John Wilson, Chief of the Lexington Fire Department (via email)
      Brenda H. Verbois, Henchy, Verbois & Hackenberg, LLC (via facsimile)

{A0210122.2 }

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ferrara Fire Apparatus Inc.
Chris Ferrara, CEO
27855 James Chapel Road
PO Box 249
Holden, Louisiana 70744

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *[signature]*  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )  C. Date of Delivery

WAYNE PICKINE  7-8-13

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)

7011 0110 0001 4470 7958

PS Form 3811, February 2004  Domestic Return Receipt  102595-02-M-1640

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ .66 |
| Certified Fee | 3.10 |
| Return Receipt Fee (Endorsement Required) | 2.55 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.31 |

Postmark Here

7011 0110 0001 4470 7958

Sent To
Ferrara Fire Apparatus Inc.
Street A
or PO Bo Chris Ferrara, CEO
City, State 27855 James Chapel Road
PO Box 249
Holden, Louisiana 70744

PS Form 3800, August 2006  See Reverse for Instructions

UNITED STATES POSTAL SERVICE

|||||||

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Anderson & Kreiger, LLP
One Canal Park, Suite 200
Cambridge, MA 02141

NPC - Lexington - Ferran - 93A letter